Filed 10/15/13  In re Dahlia C. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

|  |  |
|---|---|
| In re DAHLIA C., a Person Coming Under the Juvenile Court Law. | B247020<br><br>(Los Angeles County<br>Super. Ct. No. CK96963) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>TYLER V.,<br><br>　　　Defendant and Appellant. |  |

APPEAL from a judgment of the Superior Court of Los Angeles County, Zeke D. Zeidler, Judge.  Reversed in part and affirmed in part.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Kimberly A. Roura, Senior Associate County Counsel, for Plaintiff and Respondent.

Tyler V., the presumed father of 22-month-old Dahlia C., appeals from the juvenile court's findings of jurisdiction and its disposition order removing the child from his custody and placing her in the care of the Los Angeles County Department of Children and Family Services (Department) for suitable placement with a nonrelated extended family member. Tyler contends there was insufficient evidence Dahlia was at risk of serious physical harm based on his history of domestic violence and marijuana and alcohol use and there were reasonable means to protect Dahlia if she was returned to his custody. We reverse the jurisdiction finding based on marijuana and alcohol use but otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Department's Investigation and the Detention of Dahlia*

In late September 2012 a mandated reporter called the Department to advise it of concern for Dahlia's well-being based, in part, on the following information: Karen C., Dahlia's mother, had a restraining order protecting her from Tyler. While attending college, Karen was staying with a friend in Pasadena rather than at her mother's apartment in Burbank; Tyler was allowed to move into the apartment with the maternal grandmother to care for Dahlia; Tyler and the maternal grandmother had argued over money while Dahlia was present in the home; Tyler screamed at the maternal grandmother he was going to kill her; the police arrived with an arrest warrant but Tyler was no longer at the scene; and Karen had said she wanted to have the restraining order revoked so she could live with Tyler.

An emergency response social worker visited the apartment the next day. The electricity had been turned off. Karen was present, as was Tyler (notwithstanding the restraining order), but the maternal grandmother had apparently moved out. The social worker observed formula, baby food, water and diapers in place; Dahlia, who was then only 10 months old, appeared cared for, clean, cheerful, developmentally on target and emotionally stable. Karen and Dahlia moved to a motel the following day and then to an apartment in North Hollywood.

2

During further investigation Tyler stated (and Karen and the maternal grandmother confirmed) he took care of Dahlia while Karen was at school or at work. Based on the social worker's observations, drug abuse was suspected. Tyler acknowledged using marijuana, but explained he had a medical marijuana license, used it only at night to help him sleep and insisted he did not consume marijuana in the apartment. The Department also learned there had been a serious incident of domestic violence prior to Dahlia's birth when Tyler choked Karen and broke furniture in their residence, which led to issuance of the criminal protective order. (The order was originally issued in March 2010 and reissued in June 2012 based on Tyler's violation of the stay-away provisions.) Notwithstanding the restraining order, Karen allowed Tyler to live with her and allowed him unlimited access to the child.

Both parents failed to appear for two scheduled on-demand drug tests in October 2012. The Department scheduled a team decision meeting in late November 2012 to address concerns regarding the child's safety and well-being. Karen cancelled the appointment stating she had to work.

Based on concerns regarding periodic incidents of domestic violence and drug abuse, and because the parents were not cooperating, the Department obtained a removal order from the court and filed a dependency petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) (serious physical harm) and (b) (failure to protect) alleging Dahlia was at risk of serious physical harm because of Tyler and Karen's history of engaging in violent altercations, specifically identifying the occasion when Tyler had choked Karen and the recent episode in which Tyler had threatened the maternal grandmother. At a hearing on December 14, 2012 the court found a prima facie case for detaining Dahlia had been established, ordered her detained with a nonrelated extended family member and vested temporary placement and custody with the Department. The court also ordered family reunification services for Karen and Tyler and directed the Department to refer them for weekly random and on-demand testing for drugs and alcohol.

3

2. *The Jurisdiction and Disposition Hearings*

On January 9, 2013 the Department filed a first amended petition alleging, in addition to the earlier allegations of domestic violence, that Karen (in count b-3) and Tyler (in count b-4) each had a substance abuse history and was a current user of illicit drugs including marijuana and alcohol. The amended petition additionally alleged each parent had failed to protect Dahlia from the effects of the other's substance abuse.

In its jurisdiction/disposition report the Department stated Karen and Tyler had met approximately five years earlier when she was 18 and he was 19 years old. Karen worked part-time; Tyler was unemployed. Karen and Tyler both acknowledged Tyler was extremely jealous and had anger issues, but denied there was ongoing domestic violence or substance abuse.

The report described the social worker's interview with Tyler, who stated he was currently on probation. Tyler claimed he had not choked or thrown Karen during the March 2010 incident, but had struck her friend who was physically attacking him during an argument while they were all intoxicated. Tyler acknowledged he had destroyed a lot of furniture during the confrontation and ruined items of clothing he had purchased for Karen by pouring bleach on them.

Karen was also on probation for damaging the car belonging to the mother of Tyler's other child. As had Tyler, Karen described the March 2010 episode as a drunken battle between Tyler and her friend who was visiting her. In contrast, law enforcement witnesses reported Karen had lacerations on her elbow and hip from being repeatedly pushed to the ground by Tyler and landing on broken glass during his outburst, which was the basis for their application for an emergency protective order. When Tyler was arrested, he had to be put in leg restraints because he was kicking inside the patrol car. Both Karen and Tyler told the social worker they wanted to have the restraining order revoked so they could resume living together.

With respect to the more recent incident involving the maternal grandmother, Tyler denied he had threatened to kill her, describing only an argument over money.

4

(Tyler claimed he had given the maternal grandmother money to pay the electricity bill; she failed to pay the bill, and the electricity in the apartment was turned off.) The maternal grandmother, on the other hand, explained that Tyler had not given her enough money to pay the bill, which was very high because Tyler and Karen ran the air conditioning all day while she was at work. During their argument Tyler told the maternal grandmother he was going to report her to the immigration authorities and threatened, "I'm going to kick your ass, and you'll see."

During one of the interviews with Karen at her apartment, the dependency investigator smelled a strong odor of marijuana from the bedroom; Tyler's clothes were found in the room. Tyler conceded he had been smoking marijuana since he was 15 years old and had taken crystal meth and cocaine and abused alcohol in the past, but claimed he had quit drugs in 2008. Tyler showed the investigator a medical marijuana license and explained he used the marijuana to cope with anxiety. Karen and Tyler failed to participate in two scheduled drug tests. Although initially denying marijuana use, Karen subsequently disclosed she had smoked marijuana for six years and had a valid marijuana license for depression and scoliosis.

Karen tested positive for marijuana on January 7, 2013, three weeks before the scheduled jurisdiction hearing. Tyler tested positive for marijuana on January 2, 2013 and again on January 24, 2013. On the latter date he also tested positive for alcohol with a 0.07 percent blood alcohol level.

On January 30, 2013 Karen signed a waiver of rights and submitted the jurisdiction issues to the court on the basis of the social study reports and other documents prepared by the Department. The following week, at a contested hearing held February 4, 2013, Tyler testified he had not choked Karen and, in fact, the violence reported that day was not with Karen but her friend. He also denied any violent altercation with the maternal grandmother and denied he had threatened to kill her. He said he was not using any illegal drugs and had enrolled in parenting and domestic

5

violence classes, explaining he was willing to listen and open to learning how to be a better father.

The court sustained all counts in the first amended petition as further amended to conform to proof: The court struck the allegation that Tyler had choked Karen during their March 2010 violent altercation and modified the allegation that Tyler had threatened to kill the maternal grandmother to state only that he had threatened her.

Turning immediately to disposition and based upon the evidence just presented at the jurisdiction hearing, the court found by clear and convincing evidence that remaining in the home of her parents would pose a substantial danger to Dahlia's physical health, safety, protection or physical or emotional well-being and no reasonable means other than removal existed to protect the child. The court declared Dahlia a dependent child of the court; her care, custody and control was placed under the supervision of the Department; and she was suitably placed with the nonrelated extended family member with whom she had been staying. Family reunification services were ordered: Karen was ordered to participate in a full drug and alcohol program with after-care, weekly random and on-demand testing for drugs and alcohol, parenting education and individual counseling to address case issues, including anger management and domestic violence. Tyler was also ordered to attend and complete a full drug and alcohol program with after-care and testing, a 52-week certified domestic violence/batterer intervention program, parenting education and individual counseling. Visitation was to be monitored for both parents, and neither was allowed to visit Dahlia with the other present.

Tyler filed a timely notice of appeal. Karen has not appealed from the juvenile court's jurisdiction findings or disposition order.

**DISCUSSION**

1. *The Governing Statute and Standard of Review*

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and

6

emotional well-being of children who are at risk of that harm." (§ 300.2; see *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.) Section 300, subdivision (a), provides that jurisdiction may be assumed if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm inflicted nonaccidentally by the child's parent. Section 300, subdivision (b), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer[] serious physical harm or illness" because the parent has failed or is unable to provide adequate supervision or protection.

Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child presently needs the court's protection. (*Ibid.*) A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461, citing *In re Rocco M.,* at p. 824.)

We review the juvenile court's jurisdictional findings and disposition orders for substantial evidence. (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966; *In re R.C.* (2012) 210 Cal.App.4th 930, 940.) Under this standard "[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible." (*In re David M.* (2005) 134 Cal.App.4th 822, 828; accord, *In re Savannah M., supra,* 131 Cal.App.4th at p. 1393; *Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96.) "However, substantial evidence is not synonymous with any evidence. A decision supported by a mere scintilla of evidence need not be affirmed on appeal. Furthermore, [w]hile substantial evidence may consist of inferences, such

7

inferences must be a product of logic and reason and must rest on the evidence; inferences that are the result of mere speculation or conjecture cannot support a finding. The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." (*David M.,* at p. 828, internal citations, quotation marks & italics omitted.)

   2. *Substantial Evidence Supports the Jurisdiction Findings as to Tyler Based on Domestic Violence*

As Tyler recognizes, because there has been no challenge to the findings and declaration that Dahlia is a dependent child of the court based on the evidence concerning Karen's actions and inaction, the juvenile court has jurisdiction over Dahlia without regard to the findings relating to him: "[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring her within one of the statutory definitions of a dependent. [Citations.] This accords with the purpose of a dependency proceeding, which is to protect the child, rather than prosecute the parent." (*In re Alysha S*. (1996) 51 Cal.App.4th 393, 397; accord, *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Nonetheless, we decline the Department's invitation to disregard Tyler's challenge to the jurisdiction findings: "[W]e generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction.'" (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.)

Sufficient evidence supports the juvenile court's determination that Tyler's admitted, recurrent anger management issues, coupled with the two specific incidents described at length in the Department's reports, placed Dahlia at substantial risk of future serious harm. (Even Tyler in his opening brief describes his "inappropriate disputes with mother and maternal grandmother," asserting only that they did not result in serious physical harm to Dahlia.) There is no longer any doubt a child's exposure to domestic

8

violence may serve as the basis for jurisdictional finding under section 300. (*In re R.C., supra*, 210 Cal.App.4th at p. 941; *In re Heather A*. (1996) 52 Cal.App.4th 183, 194.) Although Dahlia had not yet been born when Tyler choked Karen's friend and repeatedly pushed Karen to the glass-littered floor during a drunken argument, past violent behavior in a relationship is the best predictor of future violence. (See *In re E.B.* (2010) 184 Cal.App.4th 568, 576.) Indeed, Karen confirmed her continuing relationship with Tyler was characterized by fights that involved "a lot of yelling and screaming," conduct she recognized constituted emotional abuse. Moreover, Dahlia was present during Tyler's high volume argument with her maternal grandmother in which, as well as spewing verbal abuse, Tyler repeatedly threatened physical violence. In addition, evidence presented to the court established Tyler had numerous arrests, culminating in one juvenile adjudication and one adult misdemeanor conviction, for crimes involving the use of personal violence. This risk of harm to Dahlia is further magnified by Tyler's and Karen's repeated violations of a restraining order and their announced intention to continue to live together. The juvenile court's assertion of jurisdiction on this ground was justified.

3. *There Is Not Substantial Evidence To Support the Jurisdictional Finding Based on Use of Marijuana or Alcohol Abuse*

Although the combination of Tyler's anger management issues with his use of marijuana and alcohol is cause for concern, the Department presented no evidence Tyler was currently involved in any illicit drug use as alleged in the amended petition: He apparently had a valid medical marijuana license, as did Karen; and there was no indication his recent use of alcohol was coupled with illegal behavior. There was a similar absence of evidence that Tyler's or Karen's legal use of marijuana or alcohol constituted "substance abuse" or that it placed Dahlia at any risk of harm. To the contrary, the evidence presented indicated Dahlia was well cared for and developing appropriately.

To be sure, the Legislature has declared, "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety,

9

protection and physical and emotional well-being of the child." (§ 300.2.) Exercise of dependency court jurisdiction under section 300, subdivision (b), is proper when a child is "of such tender years that the absence of adequate supervision and care poses an inherent risk to [his or her] health and safety." (*In re Rocco M., supra,* 1 Cal.App.4th 814, 824; see *In re Drake M., supra*, 211 Cal.App.4th at p. 767 [finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm].)

Nonetheless, without more, use of medical marijuana or alcohol by a parent is not a sufficient basis to assert dependency jurisdiction. (*In re Drake M., supra,* 211 Cal.App.4th at p. 764; see *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003; *In re Alexis E., supra*, 171 Cal.App.4th at p. 453.) A finding of current substance abuse is necessary (*In re Drake M.*, at p. 766); and even then, there must be some evidence of an inability or failure to adequately supervise or protect the child as a result of the substance abuse problem. (*Id.* at p. 768; see *In re David M., supra*, 134 Cal.App.4th at p. 830 [reversing jurisdictional finding under § 300, subd. (b), due to lack of evidence mother's continuing substance abuse problems created specific, defined risk of harm].) Although the violent altercation in March 2010 was alcohol-fueled, there was no evidence of any misuse of marijuana or alcohol following Dahlia's birth that created a risk of harm to her. Accordingly, the count b-4 jurisdiction finding based on Tyler's use of marijuana and alcohol is reversed.

4. *The Disposition Order Is Supported by Substantial Evidence*

Before the court may order a child physically removed from his or her parent, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal. (§ 361, subd. (c)(1); *In re R.V.* (2012) 208 Cal.App.4th 837, 849.) Tyler challenges the court's order removing Dahlia from his custody, asserting

10

there was no evidence removal was necessary to protect her from harm.[1]  We review the disposition findings for substantial evidence.  (*In re Lana S.* (2012) 207 Cal.App.4th 94, 105; *In re N.M., supra*, 197 Cal.App.4th at p. 170.)

The jurisdictional findings are prima facie evidence the child cannot safely remain in the home.  (§ 361, subd. (c)(1); *In re T.V.* (2013) 217 Cal.App.4th 126, 135.)  The child need not have been actually harmed before removal is appropriate.  (*In re A.S.* (2011) 202 Cal.App.4th 237, 247; *In re T.V.*, at pp. 135-136.)

Tyler emphasizes he had already begun participating in domestic violence and parenting programs following the Department's initial intervention, services that would provide a reasonable means to protect Dahlia while allowing her to reside with her father.  However, the juvenile court, which had heard Tyler explain his participation in the programs, rejected that argument, commenting that Tyler's testimony indicated he was in total denial, that is, he believed none of what was being said in the programs related directly to him; he was just listening to other people share what was happening in their lives.  Because the court concluded Tyler had not yet made any progress in dealing with his severe anger/violence issue, it ordered Dahlia removed from his custody.  That finding is supported by substantial evidence.

## DISPOSITION

The juvenile court's finding and order sustaining the allegations in count b-4 regarding father Tyler V.'s use of marijuana and alcohol are reversed.  In all other respects its February 4, 2013 findings and order are affirmed.

PERLUSS, P. J.

We concur:


WOODS, J.                           ZELON, J.

---

[1]     Tyler does not challenge any other aspect of the disposition order, including his court-ordered participation in a drug and alcohol program with testing.